Thank you, Your Honor. May it please the Court, Alison Guernsey, on behalf of Mr. Bennett. Mr. Bennett has appealed the District Court's denial of his motion to suppress under the Fourth Amendment and the government, of course, has cross-appealed the District Court's sentencing determination that Mr. Bennett is not an armed criminal. I'll focus first on the suppression issue and then turn to sentencing. It's our position that the District Court erred in denying Mr. Bennett's suppression motion for three reasons. First, the District Court erred in disapplying the test that this Court has adopted in both Glover and Reed for the service of arrest warrants on properties where officers are unable to determine whether the property they're about to enter belongs to the subject of the arrest warrant. Here, our position is that law enforcement entered the curtilage where they executed the arrest warrant without possessing a reasonable- It's not even clear to me why Mr. Bennett has standing to challenge the invasion, so to speak, of the curtilage of whoever owned this place. Certainly, Your Honor. I think that the inquiry as to standing whether or not, and the inquiry under Glover, is a different inquiry. The inquiry under Glover is the information that the officers possessed prior to entering the property, whereas standing is more of a factual inquiry as to whether there's sufficient evidence to demonstrate that someone has a reasonable expectation of privacy- But he was present. You're saying, well, there wasn't sufficient knowledge that he resided there, but he didn't have to reside there for them to identify him from off the premises and then confirm his identity so as to execute an arrest warrant. Glover doesn't have anything to do with that, seems to me. So Glover talks about when law enforcement officers are unsure about the ownership of a property that they're about to enter or who resides at the property that they're about to enter, they have to engage in this inquiry of reasonable belief in both presence and residence. I don't accept that. You can enter a curtilage to do lawful things like execute an arrest warrant where the entry would be suspect if it was into the home. So I think the answer to the court's inquiry there is really a shift to what the U.S. Supreme Court has talked about in Florida versus Jardines, which is certainly that there are some instances in which law enforcement officers are authorized to engage in a physical search warrantless intrusion of property, but really that limited license is circumscribed by both the physical area that the law enforcement officer enters as well as the specific purpose for which the law enforcement officer enters. So in terms of physical area, the court in Jardines said you may approach the home by the front path, you can knock promptly, wait to be received, and then absent an invitation you must leave. And not only is it limited to that particular area, but Jardines talks about the specific purpose and it says if the purpose of the entry is to search. That wasn't the purpose here. There's no evidence of that. The purpose here is one of those, so in Jardines that was the purpose of the search. But the necessary extension of the Jardines holding is that the customary license or customary invitation to enter property is limited to what we would expect solicitor. You say the necessary extension, but that's exactly what we're talking about. You're making an extension of a case way beyond its relevant facts to a situation that's entirely different. And of course, lawyers do that to and for us all the time, and it's the legitimate process, but you can't ignore the problem of is this a valid extension of the explanation for the decision in Jimenez? Well, I think if you look at Jardines, this is where Justice Scalia really reformulates or reemphasizes the property-based rights underpinnings of the Fourth Amendment. And he talks about this unlicensed physical intrusion into a constitutionally protected area for the purposes of engaging in behavior for which there's no customary invitation. Was this even Mr. Bennett's property? The inquiry is at the time the law enforcement officers entered, did they reasonably believe that it was his property? No, I'm saying Glover, that's a false extension of Glover. They don't have to. In this situation, I don't think they have to reasonably believe he resided there. He is present. They have identified him or tentatively identified him from off the premises. They confirm the identification and they execute a valid arrest warrant. Why isn't that the end of the story? Forget Glover and Jardines. Where's the Fourth Amendment unreasonableness here? Well, the reasonableness inquiry is an inquiry that's in addition to the Jardines property-based rights inquiry, right? That was a fact question. That wasn't a law question. I think... Fourth Amendment cases, I've seen them for 30 years and you always wonder why this hasn't come up before. It's because they're so fact-intensive. I think that's right. I think if you look at this court's holding in Glover and Reed, which extends Glover, I believe, to the curtilage, coupled with Jardines' language about how the curtilage is a constitutionally protected area of the home, the extension of Glover would be that in order to enter the curtilage of a home where law enforcement officers are not aware that the person, or not sure that the person resides, they have to have the reasonable belief. The homeowner can make this argument, but Bennett can't. If he was the homeowner, then no harm, no foul. I believe that there is, because I believe the inquiry for whether or not the officers possess the reasonable belief is the information they possess at the time, whereas the standing inquiry is a different inquiry. The information they possessed was he was in a backyard, they identified him, and they had valid arrest warrants to execute. His Fourth Amendment rights have not been, on that basis, have not been invaded at all, other than to be arrested. Counsel, I'm going to take you down a little bit different path. I see this as a Reed case. Give me your best argument for why the officer did not have a reasonable belief that Bennett both resided and was present there. Certainly. Well, as we set forth in our briefing, we disagree with the district court's conclusion that the law enforcement officers identified Mr. Bennett before entering the curtilage, so we believe that we have an argument on presence. But even setting presence aside, we believe that there's insufficient evidence to show that he an anonymous tip. That anonymous tip was made, it's layers upon layers of hearsay. The anonymous tip provides a prior residence for Mr. Bennett that's not the house that's listed on the tip. In fact, the house listed on the tip is a house that doesn't even exist. Officer Askew testified during the suppression hearing that he had yet a third address where he believed Mr. Bennett to be and the really, I think, circumscribed nature in which we view anonymous tips, there simply isn't corroboration that he resides there. There isn't information apart from simply speculation. In fact, the law enforcement officers could have investigated this. They had pulled over the homeowner. What does residence mean under Glover? Your Honor, what does residence mean under Glover? Yeah, that's my theory of Glover extended. Are we talking ownership? What are we talking? I think that the inquiry in residence hasn't been defined by this court, but it would be something akin to whether the individual had an expectation of privacy in that residence because they were staying there. And so I understand that that then probably dovetails back to- Wait, the interior or the exterior? I'm sorry. A reasonable expectation of privacy in the property as a whole. The evidence established after the fact, after the officers entered, that Mr. Bennett did in fact reside at the property. He was renting a room in that property and had been there for several weeks. And law enforcement learned this through interviewing both the homeowner as well as Mr. Bennett's girlfriend. But again, because the inquiry is not... The inquiry as to whether they can enter the property is one based on the information they possess at the time. The fact that he ultimately resided there is of no moment. And of course, that's why he has standing. Well, in addition to the tip, they did have some information from a person that they talked to outside the residence. And there was also the presence of a car, which at least largely fit the description in the tip. That's right. So I think that there were two chargers present at the scene. One they identified and quickly determined was not Mr. Bennett's. And then the other didn't quite fit the description in the tip. But the description in the tip, again, it was an anonymous tip that was based off of hearsay from someone in the jail who had spoken to someone who purported to be Bennett's girlfriend. And I believe that when they were speaking with the person, I believe that the court is referring to Mr. Bollinger, who said he was there to buy cabinets. And he was really critical about who he was purchasing cabinets for and didn't say it was Jerry. When they asked the actual homeowner who was even present at the residence, the woman in the car with the homeowner said a man named Shane and another woman. So we simply believe it's our position that there isn't sufficient evidence that Mr. Bennett was residing there at the time the law enforcement officer entered that curtilage. I see I'm at about four minutes. Unless the court has any further questions, I would move quickly to the sentencing issue. Fine. Yes, please do. So it's our position that if this court affirms Mr. Bennett's motion, then he urges the court to likewise affirm the district court's conclusion that going armed with intent is not a violent felony. There are really two reasons. And the first is that a statute qualifies as an act of predicate under the attempted use of force prong only when the conviction is an attempt to commit a predicate offense that has itself as an element the use of force or threatened use of force. And the second is even assuming that you don't need a force-based predicate. Iowa statute simply does not require attempted use of force because the government's combination of two elements, movement and intent, do not equate to a substantial step. If you look at what this court has held when evaluating the attempted use of force prong, the inquiry is really twofold. The first, necessarily because an attempt doesn't exist by itself, is whether the predicate offense for that attempt has as an element the use or threatened use of force. And then the second inquiry is whether the definition of attempt is a categorical match. And here, the government is simply advocating that we push that aside and that we find, we hold, or the court hold, that you can take two elements, combine them to make an attempt, but admit that there's no underlying force conviction for that person to have attempted. And the government's primary case on this is United States versus Alexander. But in Alexander, it's the classic application of is the underlying predicate for the attempt a force-based conviction and is attempt also a categorical match? And if you check both boxes, then of course, you have a categorical match. But here, in fact, we don't. But even assuming that offense can satisfy this attempted use of force prong when there's no underlying substantive offense, going armed doesn't qualify as an attempt offense because intent and movement under Iowa law in this conviction don't equal a substantial step. A substantial step is, as this court has talked about, a step that is calculated to bring out the desired result. It's unequivocal. And in fact, in the court's opinion in Plenty Arrows, it talks about the chief purpose of the substantial step requirement is to corroborate an actor's specific intent to commit a crime. Here, movement under going armed with intent is simply that movement. It's not tied to any intent. And the perfect example of this case is in Harris. And in Harris, in fact- Counsel, let me pause you there. Gomez-Hernandez, why doesn't Gomez-Hernandez control the result on this? Certainly. Gomez-Hernandez does not control the result because that was a case that was decided prior to the US Supreme Court's decision in Mathis that talks about the appropriateness of engaging in a modified categorical approach when the elements of an offense are indivisible. The parties aren't disputing here that the elements of going armed are indivisible. So the modified categorical approach is completely inappropriate. You're really just engaging in an elements-based inquiry. And the Gomez-Hernandez court seems to recognize that there are some circumstances in which this violating of this statute simply will not be the use of force. But then, of course, it gets to the underlying facts. It's now a step that we know the Supreme Court has prohibited. And seeing I have one minute left, I would actually like to reserve the remainder of my time for rebuttal. Very good. Mr. Carl? Thank you, ma'am. Please, the court, counsel. I'll start with the suppression issue and then move on to the sentencing issue. The government believes that the suppression issue really starts and ends with Judge Jarvis' factual finding that Officer Askew saw and recognized the defendant when he got out of his patrol car before he entered the courthouse. And given that factual finding, then, under his court's decision, cases such as Weston and Raines, there would be issues whether there was a reasonable, whether it was reasonably necessary to make the entry to further the epitome of the enforcement purpose. Raines involved the sheriff's deputy, entered the curtilage, entered the backyard to serve civil process. And surely, it's serving civil process. But you have to then, why does that wipe out the counsel's argument with respect to Glover if it's found? Seeing him in the backyard didn't provide any evidence that he resides there. That is correct. Seeing him in the backyard provided evidence that he was present there. Subsequent evidence developed at the hearing indicated that he had, as counsel indicated, that he had been residing there for a couple of weeks. But in terms of what the officer knew at the time and knew from their observation, they saw that he was present there. The extension of that argument is that police have warned me and I'm walking down the sidewalk and they recognize me. All I need to do is step in the front yard of a nearby house and stand on the curtilage. I know you want to argue facts and opposing counsel wanted to argue law. Let's stick with her law approach. Do you think Glover, properly construed, applies to this case? If the government does not think so, then what's, is Glover dicta or do you need to back court a bit? Glover and we have suggested this is in the context of the interior of the West. I understand the charges of religious disdain in this situation. And again, West and Raines are still good case law in this circuit. Mr. Collins, you're fading in and out. I don't know if their mic is in the wrong place or not. I will try to speak up. That's better, yeah. Glover and Reid don't stand alone. Weston and Raines remain good law, the government believes. And therefore, to the extent that Glover and Reid suggest that there has to be evidence of residence to enter the curtilage where there is a physical evidence of presence, we would suggest that it is dicta and need not be filed all in light of Weston and Raines. Again, I think it's... Counsel, does it matter under your theory whether the officers restricted their movements to areas that were generally accessible to visitors? I think it probably helps that they did. I mean, there was a fence alongside of the property between Mr. Cook's property and the adjoining residence, but there was an open area in the fence through which the officers observed the resident's backyard. Is it your position that they stayed in areas that were generally accessible to visitors? I don't think that's what the evidence shows when I saw the video. They went into the backyard generally. That's what happened in the Raines case where the deputy noticed a knock on the door and nobody answered. It's all parked out front. Somebody might be in the backyard on a nice summer evening, so they then... The deputy walked around through a opening in the fence and while thinking he was going to serve process notice of marijuana growing, that's this sort of fact pattern. Did the officers enter the curtilage? Yes. Did they confine themselves to places like a driveway or front deck? No, they didn't. Did the government raise standing? The government maybe discussed standing peripherally in the district court, but we did not raise standing on appeal. Why was there... No, I didn't say on appeal, I meant in the district court. Is that why there was evidence at the hearing that he did in fact reside there? I presume that is why that evidence was put into the record. Do you know the record? I don't care whether you did it or not, you ought to know the record. I haven't read it. The record is that, and this evidence was put on by the defense, that Mr. Bennett had been residing in an upstairs bedroom for the past one or two weeks with a residence where transients were known to stay by the police. I don't think at this juncture I can make a straight faced lack of standing. No, no. I wasn't saying is standing an issue on appeal. I was asking was it raised in the district court? No. Because a discussion of standing would necessarily have brought the district court into confronting whether the residence side of the Glover test even applies. You're saying the government didn't confront the district court with the need to think about that? That issue was not teed up in the district court, that is correct. Unless there are further questions about the search warrant, I'd like to move on to the government's cross appeal. And with a cross appeal, we would start the discussion with Gomez Hernandez. While I may have looked at documents beyond what is strictly allowed by Sheppard, Gomez Hernandez still is good law in the government's view in terms of its articulation of the elements of going armed with intent. In fact, Iowa cases as recently as I think 2008 or 10 to use the weapon on another person and also take a significant step towards accomplishing that intent. And we think that that intent plus substantial step plus significant step essentially is the definition of 10. Counselor, why isn't Langston controlling on our panel? Langston is not controlling on the panel because the Langston panel was not asked to discuss or to decide the issue on the attempted use theory. Langston, on his face, says going armed with intent isn't a violent felony because it fails under the residual clause. We do acknowledge, and as Judge Jarvie mentioned in the briefing, the government made a force argument, but we did not make an attempt to force our argument for that panel. And in any case, it was not addressed. We think, as Judge Jarvie mentioned, we have somewhat of an ambiguous situation, but based on the law cited in our brief, we think that this panel has the authority to review that. Well, Tim, what's the authority? We can relieve the government of its mistake in Langston and go ahead and decide an issue that was implicitly decided against because you didn't raise it. The specific case I'm thinking of is if the issue isn't raised, the subsequent panel is free to look at it again. Well, but that was just force clause not raised at all, right? That's quite different than force clause being raised, but the government didn't think to argue attempted force as a distinct theory. Although the panel didn't address force clause at all, we think the attempted force issue is sufficiently distinct to give this panel an opening to review the issue on the merits. So, counsel, on that note, on the merits, is there a gap between the going element and the use or attempted or threatened use of force? In other words, while there may be this going element and it involves intent, how does that get you to force, whether it's use, attempted, or threatened? Well, because the defendant has to be, well, first of all, has to be armed with a dangerous weapon, has to have an intent to use that weapon, and then has to have that intent while he is going and while he is moving in that movement element. And if you look at the fact patterns that we've described in our brief in the Iowa cases, those fact patterns suggest an attempted use of force is always at issue in any going armed with intent case. I want to mention the Harris decision because it was mentioned a little bit by opposing counsel and it was discussed why the government thinks that Harris doesn't change the analysis. Harris at the bottom was a jury instruction case where the going element is not explained, not included in the jury instruction, and the case is reversed on that basis. And the instruction, now I'm looking at page 25 of the Harris case, the instruction at issue that was missing did not include the element of going or moving with specific intent to use the knife against the victim. Again, I think that demonstrates the use of force. Counsel, I'm going to take you over to the willful injury. And the appellate sites, the state v. Regal and state v. Alvarez, or Alvarez Diaz rather, to show that there's more than a non-theoretical possibility that there could be a prosecution where there's no use of force for the infliction of serious mental injury. What's your response to that? Tell me why you distinguish state v. Regal and state v. Alvarez Diaz. Sure. I mean, my first argument is instinctively to say, well, Quigley and Chapman control, but I understand the argument that the defense is making. Regal and Alvarez Diaz both present under assault statutes rather than under willful injury. And we would contend that those examples do not mean that disabling mental illness would realistically be used as a predicate in a willful injury of prosecution under 708.4 of Section 1. What I would, oh, I see I'm out of time. May I finish my thoughts? Yes. What I would note is that this court has already held clearly that the less serious version of willful injury, the class D felony causing bodily injury, is a crime of violence that's spread in the genome of the bar. And it's a little bit unusual to think that the more serious variety of class C felony would not be a crime of violence or, in this case, a violent felony. Thanks to the court for its time. Very good. Thank you. Thank you. Ms. Carnegie for her vote. Certainly. I will just have three points really briefly. With respect to the suppression issue, the government repeatedly mentions the cases of Weston v. Rains. I would just like to highlight for the court that those were pre-Hardina's cases. And in fact, in those cases, law enforcement limited themselves to the areas of the property that is customary to an invitation for a stranger. With respect to the going armed with intent argument, the government makes this verbal leap that I think is unsupported by the case law. The government says, Iowa criminalizes movement. That means that it's a substantial step. And there go, it's also a significant step. And then they argue that Iowa requires that you have to have the intent while moving. And that's simply not supported by the case law. If you look at Harris and in Ray IM, which are cited in our briefs, the Iowa courts repeatedly say it's sufficient for simply there to have been movement, even movement in Harris away from the victim. It was sufficient that Mr. Harris was in the bar, fought, left, waited for a girlfriend, and that movement from the bar away from the victim was sufficient for the movement element when he ultimately stabbed the individual. And I see my time is up. Very good. Very good. Ms. Gricey, the court appreciates your assistance. For a minute, counsel, the case has been well briefed and argued and we'll take it under advisement.